**STATE of Maine**

v.

**Dean Alton CURTIS.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1988.
Decided Dec. 12, 1988.

James E. Tierney, Atty. Gen., Garry L. Greene (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Michael E. Saucier (orally), Hunt, Thompson & Bowie, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

Defendant, Dean Alton Curtis, appeals from a judgment of conviction for murder, 17-A M.R.S.A. § 201(1)(A) (1983), entered after a jury trial in the Superior Court (York County; *Brodrick, J.*). Curtis argues that it was error for the hearing justice (*Cole, J.*) to deny his pretrial motion to suppress statements made in the United States to Canadian detectives. Curtis further argues that the evidence presented at trial was insufficient to support the conviction. We affirm the judgment.

### I.

On June 9, 1987, a body washed ashore on Goose Rocks Beach in Kennebunkport. The victim had been stabbed four times in the back, including one fatal wound that severed the aorta and led to rapid blood loss. The victim's car and wallet were stolen and his credit cards were used soon after his death for an unauthorized shopping spree. The victim's telephone credit card was used to make various calls from New Jersey, Florida and Canada. A York County grand jury later returned an indictment charging Curtis with the murder.

Curtis was arrested in the State of Washington. While he was incarcerated at the Skagit County Jail in Mount Vernon, Washington, Curtis was interrogated by two Canadian detectives who were investigating a different murder in Canada. One of the detectives advised Curtis of the warnings required by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436,

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),[1] and also advised him of the Canadian warnings akin to the *Miranda* warnings. During the interview, Curtis made inculpatory statements regarding the murder in Maine that were later introduced at trial.

Curtis' pretrial motion to suppress those statements was denied. The Superior Court found that Curtis was advised of the warnings required by *Miranda,* that he understood the rights referred to in the warnings and that he knowingly and voluntarily waived those rights. The Superior Court also determined that the State had proven beyond a reasonable doubt that the statements were made voluntarily.

Curtis argues that it was error for the Superior Court to deny his motion to suppress because he never expressly waived his right to remain silent. After he was advised of the *Miranda* warnings by one of the Canadian detectives, the detective asked him whether he wished to talk and whether he understood the rights referred to in the *Miranda* warnings. The detective did not pause for a response after the first question. Following the second question, Curtis replied, "Yeah." After the detective advised him of the Canadian warnings, Curtis asked the detective several questions, including whether the Canadian authorities had obtained any evidence. Curtis responded to some, but not all, of the questions asked by the Canadian detective. Curtis maintains that his implicit waiver of the right to remain silent and his right to counsel was ineffective because the State did not establish that he expressly waived those rights.

■■■ The State bears the burden of establishing by a preponderance of the evidence that a suspect was advised of the warnings required by *Miranda* and knowingly and intelligently waived the rights referred to in the warnings. *State v. Knights,* 482 A.2d 436, 440 (Me.1984). An express written or oral waiver of the right to remain silent or of the right to counsel is

---

1. Because the issue was not raised in the trial court or before us, we do not address whether an American citizen subject to custodial interrogation in the United States by foreign law enforcement officers must be advised of the *Miranda* warnings in order for inculpatory statements to be admissible in a criminal proceeding in Maine.

not required to establish waiver. *North Carolina v. Butler,* 441 U.S. 369, 373–76, 99 S.Ct. 1755, 1757–59, 60 L.Ed.2d 286 (1979); *State v. DeLong,* 505 A.2d 803, 808 (Me.1986). In the absence of words expressly signifying a waiver, a defendant's overall conduct, viewed in the context in which it occurred, may suffice to effect a waiver. *State v. Hazelton,* 330 A.2d 919, 925 (Me.1975). Here, Curtis was advised of the warnings required by *Miranda,* indicated that he understood his rights, and then asked several questions and responded to many of the questions posed by the detective. Based on the totality of circumstances, we cannot find, despite the absence of an express waiver, that the suppression justice was clearly erroneous in finding that Curtis waived his right to remain silent and to have counsel present during the interrogation. *State v. Cote,* 518 A.2d 454, 456 (Me.1986).

▮ Curtis also argues that it was error for the Superior Court to deny his motion to suppress because he invoked his right to counsel. Immediately before Curtis was advised of the rights referred to in the *Miranda* warnings, the Canadian detective asked him if he was familiar with a "thing called *Miranda.*" Curtis responded, "I know it by heart. I've already spoken to my attorney." Curtis contends he invoked his right to counsel when he made that statement. We disagree.

▮ When a suspect makes an unambiguous and unequivocal request for counsel and thereby invokes his right to counsel, custodial interrogation must cease and the police may not resume interrogation until counsel has been made available or the suspect initiates further discussions with the police and waives the right he previously invoked. *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984); *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). A suspect does not invoke the right to counsel every time he uses the word "attorney." *See United States v. Jardina,* 747 F.2d 945, 949 (5th Cir.1984), *cert. denied* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985). Curtis' statement

that he was familiar with the *Miranda* warnings and that he had already spoken to his attorney was not a request for an attorney. Curtis was then immediately advised of his rights, but did not again refer to his attorney during the interrogation. There is ample support in the record for the suppression justice's finding that Curtis understood the rights outlined in the *Miranda* warnings, and knowingly and voluntarily waived those rights.

▮ Curtis further argues that his statements were involuntary because they were spontaneous and made while he was emotionally upset. In order to be admissible, a statement must be voluntary. *State v. Larrivee,* 479 A.2d 347, 349 (Me 1984). A statement is voluntary if "it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *State v. Mikulewicz,* 462 A.2d 497, 501 (Me.1983). The record provides rational support for the Superior Court's finding that Curtis' statements were voluntary beyond a reasonable doubt. Curtis participated actively in the interview. He asked the detectives several questions and avoided direct answers to certain questions. He was not ill, he was not coerced and he was alert. His isolated emotional outburst during the interview does not compel a conclusion that his statements were involuntary. There was no error in the denial of Curtis' motion to suppress.

II.

▮ Curtis next argues that the evidence is insufficient to support his conviction of the offense of murder. We will set aside a conviction challenged on the ground of insufficiency of the evidence only if, after viewing the evidence in the light most favorable to the State, no finder of fact rationally could have found every element of the crime beyond a reasonable doubt. *State v. Barry,* 495 A.2d 825, 826 (Me. 1985). A conviction may rest entirely on circumstantial evidence and such evidence is not inferior to direct evidence. *State v. Crosby,* 456 A.2d 369, 370 (Me.1983).

Viewed in the light most favorable to the State, the jury in the instant case was warranted in finding the following facts.

 Curtis arrived in Ogunquit during May of 1987 and identified himself as Mogen Berguin, an assumed name he used during his stay in Maine. He owned at least two knives and displayed one of them on several occasions. Sometime during May, Curtis and the victim entered into a homosexual relationship.

The victim lived with his parents in Connecticut. His family owned a beach house on Goose Rocks Beach in Kennebunkport. On June 7, 1987, the victim arrived in Maine to visit Curtis. Around 4:30 p.m. on June 8, 1987, Curtis and the victim were seen at the beach house. Around 7:00 p.m. that evening they purchased ice and champagne at a local market. At 8:00 p.m. they were seen entering Curtis' room at an inn in Ogunquit. Curtis was the last person seen with the victim while he was alive. At 10:00 p.m. the victim called his father from the beach house. He was never heard from again.

On June 9, 1987, the victim's body, clad only in underwear and socks, washed ashore near the beach house. The body was wrapped in a blanket from the beach house. A search of the beach revealed several blood stains matching the victim's blood, a sweater, a pair of pants and two wine goblets similar to those kept in the beach house. An empty bottle of champagne on ice and a liquor bottle were found in the house. Curtis' fingerprint was on the liquor bottle.

Sometime late in the evening of June 8, 1987, or early the next morning, Curtis emptied out his room at the inn in Ogunquit and stole the victim's car. He made a series of purchases in several states using the victim's credit cards and cashed one of the victim's checks. On June 9, 1987, Curtis used the victim's telephone credit card to call the Kennebunk Police Department. He expressed concern about a friend and asked if there had been any accidents or arrests. Curtis made at least one other phone call to the police on a later date during which he inquired about the victim.

On June 10, 1987, Curtis arrived in Montreal, Canada. He used the victim's name when identifying himself. Later that day, he called the victim's sister in Connecticut and laughed when told that the victim was dead. Several days later, he told a friend in Montreal that his lover in Maine had committed suicide by drowning the previous week.

When Curtis was arrested in Washington State, he was carrying in his shirt pocket a credit card that belonged to the victim. The victim's wallet, other credit cards and driver's license were found in the car operated by Curtis at the time of his arrest. While he was interviewed by the Canadian detectives in Washington State, in response to a question asking why he was so angry, Curtis responded that it was individuals like the victim who "made me do it."

In light of the above evidence, the jury rationally could have found Curtis guilty of murder beyond a reasonable doubt. *Barry,* 495 A.2d at 826.

The entry is:

Judgment affirmed.

All concurring.