**STATE of Maine**

v.

**Danny McCLUSKIE.**

Supreme Judicial Court of Maine.

Argued June 4, 1992.

Decided July 23, 1992.

Michael E. Carpenter, Atty. Gen., Thomas Goodwin, and Sarah Roberts Walton (orally), Asst. Attys. Gen., Augusta, for the State.

William Maselli (orally), Andover, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Danny McCluskie appeals from his conviction of murder in violation of 17–A M.R.S.A. § 201(1)(A) (1983),[1] after a jury trial in the Superior Court (Oxford County, *Bradford, J.*). McCluskie argues, *inter alia*, that the trial court erred when it (1) denied his motion to suppress his confession, and (2) instructed the jury on accomplice liability, and (3) failed to instruct the jury on manslaughter. Finding no reversible error, we affirm the conviction.

Based on the record, the jury would have been justified in finding the following facts. In the spring of 1989, McCluskie's wife Brenda began an affair with a fellow employee of DeCoster Egg Farms, Jeff Gagnon. After several weeks of a tumultuous relationship during which McCluskie threatened to kill Gagnon and Gagnon threatened to kill the whole McCluskie family as well as himself, Brenda sought to escape from the relationship with Gagnon. On July 8, 1989, while Brenda drove Gagnon to a particular spot in Dixfield, Brenda's father, Alfred Thibeault, drove McCluskie to the same spot where Gagnon was bound and shot to death. They disposed of the body in the woods and then

---

1. 17–A M.R.S.A. § 201(1)(A) (1983) states: A person is guilty of murder if:

   **A.** He intentionally or knowingly causes the death of another human being....

returned to Thibeault's house to dispose of Gagnon's belongings.

With Thibeault's assistance, the police discovered Gagnon's body almost a year later. Brenda and McCluskie were found and arrested in California and returned to Maine for trial. While McCluskie was in custody in California, Detective Dale Lancaster of the Maine State Police conducted an interview with McCluskie in which McCluskie first denied and then confessed to shooting Gagnon. Prior to trial, McCluskie moved to suppress this confession on the grounds that it was involuntary and was taken in violation of his constitutional rights. The court denied the motion and a tape of the confession was played in its entirety at trial. This appeal followed McCluskie's conviction.

■ McCluskie first argues that his confession should have been suppressed. At McCluskie's questioning in California, Detective Lancaster read McCluskie his *Miranda* warnings,[2] and McCluskie responded that he understood them. Without Detective Lancaster asking McCluskie if he wished to waive his rights, McCluskie proceeded to talk freely with Lancaster and answer his questions. "An express written or oral waiver of the right to remain silent or of the right to counsel is not required to establish waiver." *State v. Curtis,* 552 A.2d 530, 531–32 (Me.1988). In the circumstances of this case, it was not clear error for the court to conclude that McCluskie had implicitly waived his right to remain silent and right to counsel. *See State v. Bragg,* 604 A.2d 439, 440 (Me.1992); *State v. Leone,* 581 A.2d 394, 397 (Me.1990); *Curtis,* 552 A.2d at 532 (defendant's overall conduct may suffice to effect a waiver).

■ At one point during the conversation, McCluskie said "I've talked too much the way it is anyway, without a lawyer." When a suspect unequivocally requests an attorney and invokes his right to an attorney, custodial interrogation must cease. *Curtis,* 552 A.2d at 532. Even an ambiguous reference by a suspect of the right to have an attorney present requires that further inquiry be made to insure that he is not requesting an attorney and desires to continue the interrogation. *See State v. Ladd,* 431 A.2d 60, 62–63 (Me.1981). In this case, the trial court found that McCluskie's statement did not amount to an assertion of his right to an attorney, even an ambiguous one, and on this record, we cannot say that determination was clearly erroneous. *See Curtis,* 552 A.2d at 532 ("[a] suspect does not invoke the right to counsel every time he uses the word 'attorney' ").

■ Finally, even though there was evidence that McCluskie had been in a fight in the California jail, that he missed Brenda and his children, and was worried about the impending prosecution in Maine, the trial court was not clearly erroneous in concluding that Detective Lancaster did not exert any improper influence on McCluskie and that McCluskie's confession was voluntary beyond a reasonable doubt. *See Leone,* 581 A.2d at 397–98; *Curtis,* 552 A.2d at 532; *State v. Knights,* 482 A.2d 436, 440 (Me.1984).

■ McCluskie also argues that his conviction should be vacated because the evidence was insufficient to support giving an accomplice liability instruction and that the court erred in its statement of the law when it instructed the jury. *See* 17–A M.R.S.A. § 57 (1983).[3] We are unpersuaded by both arguments.

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** 17–A M.R.S.A. § 57 states in relevant part:
   **1.** A person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable as provided in this section.

**2.** A person is legally accountable for the conduct of another person when:
   . . . .
   **C.** He is an accomplice of such other person in the commission of the crime, as provided in subsection 3.
   **3.** A person is an accomplice of another person in the commission of a crime if:
   **A.** With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or

In his confession, McCluskie admitted to accompanying Thibeault to meet Brenda and to shooting Gagnon as he tried to run away. At trial, however, McCluskie testified that Brenda killed Gagnon without his knowledge and that he had confessed to the crime to protect Brenda. Given the conflicts in his own versions of the events and the other circumstantial evidence pointing to his complicity in the murder, there was sufficient evidence for the jury to find that McCluskie assisted in the murder with the requisite intent even though he may not have shot Gagnon. Therefore, it was not error for the court to give the accomplice liability instruction. *See State v. Greenwald,* 454 A.2d 827, 830 (Me.1982).

■ McCluskie next contends that the court erred in its instruction to the jury on accomplice liability. Because McCluskie failed to object to the court's statement of the law of accomplice liability, we review the instruction only for obvious error. *State v. Estes,* 418 A.2d 1108, 1117 (Me. 1980); *State v. True,* 438 A.2d 460, 467 (Me.1981); M.R.Crim.P. 30(b), 52(b). We analyze the alleged error in the context of the whole instruction, taking into account the total effect created by all the instructions and the potential for juror misunderstanding. *State v. Harper,* 568 A.2d 1107, 1108 (Me.1990); *State v. Cote,* 462 A.2d 487, 490 (Me.1983). In this case, the court's instruction, viewed in its entirety, was not so highly prejudicial as to virtually deprive McCluskie of a fair trial and thus did not rise to the level of obvious error. *True,* 438 A.2d at 468.

■ For the first time on appeal, McCluskie contends that the evidence was sufficient to merit an instruction on both reckless or criminally negligent manslaughter, *see* 17–A M.R.S.A. § 203(1)(A), and adequate provocation manslaughter, *see* 17–A M.R.S.A. § 203(1)(B) (Supp.1991); [4] *see also* 17–A M.R.S.A. § 201 (Supp.1991). His contentions are unpersuasive. Because McCluskie failed to request the manslaughter instructions, we review his contention only for obvious error. *State v. Rainey,* 580 A.2d 682, 685 (Me.1990). The evidence at trial would not support a finding that McCluskie caused Gagnon's death recklessly or with criminal negligence. Only intentional or knowing murder or accomplice liability is supported in the record. Nor is there a sufficient basis in the evidence to generate an instruction that McCluskie caused Gagnon's death under extreme anger or extreme fear brought about by adequate provocation. *Tribou v. State,* 552 A.2d 1262, 1266 (Me.1989) (*Wathen, J.,* dissenting); *State v. Flick,* 425 A.2d 167, 172 (Me.1981).

We have reviewed the other contentions asserted by McCluskie and we find them to be without merit.

The entry is:

Judgment affirmed.

All concurring.

---

aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct....

4. 17–A M.R.S.A. § 203 (Supp.1991) states in relevant part:
    **1.** A person is guilty of manslaughter if that person:

    **A.** Recklessly, or with criminal negligence, causes the death of another human being;
    **B.** Intentionally or knowingly causes the death of another human being under circumstances which do not constitute murder because the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation. Adequate provocation has the same meaning as in section 201 subsection 4.