Portsmouth District Court
No. 2000-250

## THE STATE OF NEW HAMPSHIRE

v.

## BRIAN DUFFY

July 23, 2001

*Philip T. McLaughlin*, attorney general (*Constance N. Stratton*, assistant attorney general, on the brief and orally), for the State.

*Law Office of Mark Stevens*, of Salem (*Mark L. Stevens* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Brian Duffy, appeals his conviction in the Portsmouth District Court (*Taylor*, J.) on one count of driving

while intoxicated. *See* RSA 265:82 (1993) (amended 1995, 1996). He argues that the trial court erred by admitting (1) opinion evidence regarding the horizontal gaze nystagmus (HGN) test and (2) certain of the defendant's statements made during the booking process. We reverse and remand.

The record discloses the following facts. On December 19, 1999, an officer of the Portsmouth Police Department observed the defendant's overturned vehicle near the Portsmouth traffic circle. While talking to the defendant, the officer detected the "faint odor" of alcohol on his breath, and observed that the defendant appeared nervous. Upon questioning, the defendant indicated that he had recently consumed three alcoholic beverages. After waiting ten minutes, the officer conducted the HGN test, the one-legged stand test and the nine-step walk-and-turn test. The defendant's performance on these tests indicated to the officer that the defendant was intoxicated.

The officer arrested the defendant and, after the defendant indicated he would refuse chemical testing, transported him to the police station. While in the cruiser, an officer read the defendant his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The officer testified that the defendant said that he understood these rights. There is no written waiver evidencing this exchange. There is nothing in the record of an oral waiver. Once at the station, the defendant was read his rights relative to the administrative license suspension (ALS) statute, and instructed to fill out a form requiring him to write his initials next to several questions.

About ten minutes after being read his *Miranda* rights in the cruiser, and immediately following the officer's instructions to respond to questions on the ALS form, the defendant was asked by the officer "approximately how much he had had to drink." Responding, the defendant indicated that he had one "Jack and Coke, and then he said that he went to the Rusty Hammer . . . where he said he had three Jim Beam and waters." Prior to trial, the defendant filed a motion *in limine* seeking to suppress these statements. Without offering any basis for overruling the defendant's objections, the trial court admitted these statements.

Following trial, the defendant was convicted. On appeal, the defendant argues that (1) the trial court erred in admitting evidence of the HGN test without first establishing a foundation for the scientific validity of that test and (2) that his statements made during the booking process should have been suppressed because the State did not prove that he knowingly and voluntarily waived his

*Miranda* rights. We find the defendant's second argument dispositive of this case, and address it first.

■ The defendant contends his statements made during the booking process should have been suppressed under both the State and Federal Constitutions. "Because our State Constitution affords greater protection to a criminal defendant than the Federal Constitution in requiring the State to prove the voluntariness of the defendant's statements beyond a reasonable doubt rather than by a preponderance of the evidence, we need not undertake a separate federal analysis." *State v. Ford*, 144 N.H. 57, 60 (1999); *see also* N.H. CONST. pt. I, art. 15.

We must begin our inquiry with the presumption that a defendant did not waive his rights. *See State v. Gravel*, 135 N.H. 172, 178 (1991). A waiver need not be express to be valid. *See Torres*, 130 N.H. at 343. Rather, "we must ascertain whether, under the totality of the circumstances, the defendant's understanding of his rights coupled with his conduct supports the trial court's ruling that he otherwise voluntarily, knowingly, and intelligently waived his rights beyond a reasonable doubt." *Id.*

■ The burden lies with the State to demonstrate beyond a reasonable doubt that a defendant has knowingly and voluntarily waived his *Miranda* rights. *See State v. Torres*, 130 N.H. 340, 342-43 (1988). To aid us in reviewing a trial court's determination of waiver, we have required trial courts to "enter an express finding that the waiver (and any confession) was voluntary beyond a reasonable doubt." *State v. Gullick*, 118 N.H. 912, 915 (1978). Though the State correctly points out that our ruling in *Gullick* did not create a substantive right to have an explicit ruling in the record, such rulings, nevertheless, help this court understand whether the trial court applied the correct standard in finding the waiver of a defendant's rights. *See State v. Radziewicz*, 122 N.H. 205, 211 (1982). "We will not reverse [the trial court's] finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary." *State v. Dumas*, 145 N.H. 301, 302 (2000) (quotation omitted).

The record in this case demonstrates that the defendant indicated that he *understood* his rights when they were explained to him by the officer in the cruiser. Whether the defendant *understands* his rights and whether the defendant has *waived* his rights, however, are two separate matters. *See Gullick*, 118 N.H. at 915.

■ Given that there was no express waiver, we look to the defendant's course of conduct and the surrounding circumstances to

determine if the defendant impliedly waived his rights. *Cf. State v. Butler*, 117 N.H. 888, 891 (1977) (reminding law enforcement officials of the dangers of suppression when relying upon implied waivers alone). The significant circumstances here are that the defendant was read his rights in the cruiser, taken to the police station where he was booked, required to answer questions on the ALS form, and required to decide whether to take a chemical test. Following which, he was interrogated by an officer. The defendant argues that these "intervening events" necessitated a refreshing of the *Miranda* warnings before interrogation.

■ Where a defendant first orally indicates that he understands his right to remain silent and then initiates a dialogue with the police, courts generally conclude that a knowing and voluntary waiver has occurred. *See, e.g., State v. McCluskie*, 611 A.2d 975, 977 (Me. 1992), *cert. denied*, 506 U.S. 1009 (1992); *State v. Aversa*, 501 A.2d 370, 376 (Conn. 1985) (applying the preponderance of the evidence standard to determine if the waiver was voluntary and intelligent). This court has recognized that where there has been an express written waiver and an intervening polygraph test, the defendant's subsequent statements are admissible because "there is no *per se* requirement to remind him of his rights continually." *State v. Monroe*, 142 N.H. 857, 868 (1998), *cert. denied*, 525 U.S. 1073 (1999).

■ This case, however, differs from the above cases in two important respects. First, unlike in *Monroe*, the defendant here never expressly waived his rights, either orally or in writing. Under these circumstances, the State bears a heavier burden in demonstrating that specific conduct combined with understanding gave rise to the implication of waiver. Second, unlike in the *McCluskie* and *Aversa* cases, here the defendant did not initiate conversation, rather the police officer initiated interrogation.

Additionally, given that the defendant was required to answer ALS form questions and standard booking questions immediately prior to being asked how much he drank that evening, he may very well have thought he was also required to answer the officer's question. There are no facts or findings to refute such a claim. While the evidence suggests that the defendant may have understood his rights, no fact whatsoever establishes that he voluntarily *waived* his right to remain silent before he answered the police officer's question. We conclude that it was against the manifest weight of the evidence to find that the State proved beyond a reasonable doubt

that the defendant voluntarily and intelligently waived his rights. Accordingly, we reverse and remand.

The defendant also argues that the results of the HGN test were improperly admitted. Because this issue is likely to arise on remand, we will address it. *See State v. Frost,* 141 N.H. 493, 498 (1996). New Hampshire Rule of Evidence 702 requires that opinion evidence, based upon scientific principles, must meet a threshold level of reliability to be admissible. *See State v. Hungerford,* 142 N.H. 110, 121 (1997). This court has never decided if the HGN test is based on scientific principles within the meaning of Rule 702. The trial court did not make any preliminary determination in this regard. Rather, with respect to the evidence, the court noted, "it's very, very subjective, in this Court's opinion . . . it's a question of what weight I give it, I guess."

On remand, if the State intends to offer evidence of the HGN test, it should note that this court recently ordered, in a factually and procedurally similar case, that the Concord District Court hold a hearing regarding the reliability of the HGN test and whether Rule 702 requires preliminary findings prior to its admission. *See State v. Dahood,* No. 99-510 (N.H. June 5, 2001).

*Reversed and remanded.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.