Nashua District Court
No. 2001-516

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM R. CHRISICOS

Argued: October 17, 2002
Opinion Issued: November 25, 2002

*Philip T. McLaughlin,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Wilson, Durkin & Bush, P.C.* of Nashua (*Eric R. Wilson* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, William R. Chrisicos, appeals his conviction of driving while under the influence of liquor. *See* RSA 265:82 (Supp. 2002). He argues that the Nashua District Court (*Huot,* J.) erroneously denied his motion to suppress statements he made during the booking process. We reverse and remand.

On May 31, 2001, an officer of the Nashua Police Department responded to the scene of an auto accident. Two ambulance attendants were treating a laceration on the defendant's head, and when the officer spoke with him, he noted a strong odor of alcohol on the defendant's breath. The officer conducted a field sobriety test, and upon questioning, the defendant indicated that he had consumed three beers. The officer concluded that the defendant was intoxicated and advised him of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436 (1966). The defendant did not respond, but asked the officer questions about his car. The officer refused to answer his questions before the defendant stated whether he understood his rights. In response, the defendant said he

understood his rights, and the officer asked if he wanted to speak to him. The defendant said he did and asked several questions about his car.

An ambulance took the defendant to the hospital, and the officer followed behind. While at the hospital, the officer asked the defendant if he would sign an Administrative License Suspension (ALS) form and take a blood test; the defendant refused. After he was treated at the hospital, the officer drove him to the Nashua Police Department. The officer told the defendant that he was required to answer questions during the booking process. In addition to standard booking questions, the officer asked the defendant how much alcohol he had consumed; he replied that he drank six beers.

At his bench trial, the defendant argued that his booking statement regarding alcohol consumption should be suppressed because it was obtained without a valid waiver of his *Miranda* rights. The court admitted the statements, finding that the defendant had waived his *Miranda* rights.

On appeal, the defendant argues that his statements during the booking process regarding his alcohol consumption should have been suppressed under both the State and Federal Constitutions because an officer told him he was required to answer the booking questions, the alcohol consumption question was designed to elicit an incriminating response, and he had not waived his *Miranda* rights. *See* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 15; *Miranda*, 384 U.S. 436.

We address the defendant's State constitutional claim first, citing federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). "Because we have established that the Federal Constitution affords no greater protection than the State Constitution with regard to the defendant's rights under *Miranda*, we will not undertake a separate federal analysis." *State v. Jeleniewski*, 147 N.H. 462, 465 (2002).

"[B]efore a statement can be admitted into evidence, the State has the burden of proving beyond a reasonable doubt that the defendant was apprised of his or her constitutional rights and that the subsequent waiver was voluntary, knowing and intelligent." *State v. Plante*, 133 N.H. 384, 386 (1990). On appeal, "[w]e will not reverse the trial court's finding on the issue of waiver unless the manifest weight of the evidence, when viewed in the light most favorable to the State, is to the contrary." *State v. Duffy*, 146 N.H. 648, 650 (2001) (quotation and brackets omitted).

Statements made in response to routine booking questions need not be suppressed even if the defendant did not first waive his or her *Miranda* rights. *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990); *see State v. Jaroma*, 137 N.H. 143, 149 (1993). The exception applies to

"questions to secure the biographical data necessary to complete booking or pretrial services," and includes the defendant's name, address, height, weight, eye color, date of birth and current age. *Muniz*, 496 U.S. at 601 (quotation omitted). On the other hand, in the absence of waiver, "police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Id.* at 602 n.14; *see Com. v. Woods*, 645 N.E.2d 1153, 1157 (Mass. 1995).

■ When the booking officer asked the defendant how much alcohol he had consumed, it was, in this context, a question designed to elicit an incriminating response, and can hardly be classified as a routine booking question. Thus the statement should have been suppressed if the defendant did not validly waive his *Miranda* rights. *See Muniz*, 496 U.S. at 600, 602.

■ "Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *State v. Gullick*, 118 N.H. 912, 915 (1978) (quotation omitted). We begin our waiver inquiry with the presumption that the defendant did not waive his rights. *Duffy*, 146 N.H. at 650. In the absence of an express waiver, we look to the totality of the circumstances to determine whether the defendant's understanding of his rights, together with his conduct, support the trial court's ruling that the defendant voluntarily, knowingly and intelligently waived his rights beyond a reasonable doubt. *Id.*; *Plante*, 133 N.H. at 386-87. Where a defendant has not expressly waived his rights, either orally or in writing, "the State bears a heavier burden in demonstrating that specific conduct combined with understanding gave rise to the implication of waiver." *Duffy*, 146 N.H. at 651.

The State argues that this case is more like *Plante*, where we concluded that the defendant waived his *Miranda* rights, than *Duffy* and *Gullick*, where the defendants did not. *Compare Plante*, 133 N.H. 384, *with Duffy*, 146 N.H. 648, *and Gullick*, 118 N.H. 912. It argues that when the officer asked if the defendant wished to talk to him and the defendant replied that he did, that was, in essence, an inquiry whether the defendant wished to waive his rights. In contrast, in *Duffy*, the officer asked only whether the defendant understood his rights. We are not persuaded that the defendant's willingness to talk to the officer about his car amounted to a waiver of his right to remain silent.

The State attempts to distinguish *Gullick* by noting that there the defendant refused to sign a written waiver of his *Miranda* rights and testified that he felt he had to talk to the police, whereas here the defendant neither testified nor refused to waive his *Miranda* rights. The

State also claims that there was no evidence that the defendant in this case incriminated himself because he was told that he was required to answer questions. The defendant's decision not to testify cannot be construed against him, and there is no evidence that the defendant was given an opportunity to waive his *Miranda* rights in writing. The record supports the conclusion that the officer told him that he was required to answer booking questions, and one of those questions was how much alcohol he had consumed. We conclude that this case is more like *Duffy* and *Gullick* than *Plante*.

In *Plante*, an officer interviewed the defendant in his office at the police station. *Plante*, 133 N.H. at 385. The officer read the defendant his *Miranda* rights from a standard form, and after each right the defendant answered that he understood. *Id.* at 385-86. He initialed the form to that effect, and initialed it again after agreeing to talk to the officers. *Id.* at 386. The defendant answered questions, and his answers were recorded in a statement that he signed. *Id.* The State argues that the facts in *Plante* are nearly identical to the facts of this case. We disagree.

In the present case, a police officer orally advised the defendant of his *Miranda* rights at the scene of the accident. The defendant, without responding to the *Miranda* warning, began questioning the officer about what would happen to his antique car. The officer refused to answer the defendant's questions until he stated whether he understood his rights. Thereafter, the defendant stated that he understood his rights. The officer asked if the defendant wanted to speak to him. The defendant said he did, and asked several questions about his car. Later, at the hospital, the officer read the defendant his rights relative to the ALS form, and the defendant refused to sign the form or submit to a blood test. Prior to booking, an officer told the defendant that he was required to answer booking questions, one of which was how much alcohol he had consumed.

Although the defendant stated that he understood his rights, that does not necessarily amount to a waiver. *See Duffy*, 146 N.H. at 651. When he agreed to talk to the officer, it was to ascertain what would happen to his car; this was not necessarily tantamount to a waiver. *See Gullick*, 118 N.H. at 914-15. There is no evidence that he initiated any discussion at the hospital or during the booking process. *See Duffy*, 146 N.H. at 651. Given that he refused to sign the ALS form, that a police officer told him that he was required to answer booking questions, and that those questions included one about his alcohol consumption, he may very well have thought he was required to answer the consumption question. *See id.* Even if the defendant understood his rights, there is no evidence that he voluntarily

waived his right to remain silent before he answered the booking question regarding his alcohol consumption. *See id.* Viewing the totality of the circumstances, we conclude that it was against the manifest weight of the evidence to find that the State met its heavy burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his *Miranda* rights. Accordingly, we reverse and remand.

*Reversed and remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.