Theodore Smith, Esq
Catherine Francke, ADA

STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
DOCKET NO: HCR-03-246

*EAH -ARO-2/17/2004*

| | | |
|---|---|---|
| STATE OF MAINE | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER ON MOTION TO SUPPRESS |
| | ) | |
| | ) | DONALD L. GARBRECHT<br>LAW LIBRARY |
| | ) | |
| | ) | |
| KENNETH J. LEVESQUE, | ) | MAR 24 2004 |
| Defendant | | |

Pending before the court is the Defendant's motion to suppress evidence. For the reasons

set forth herein, the court denies the motion.

## BACKGROUND

The Defendant stands before the court charged with the crime of Gross Sexual Assault.

Shortly after the events that give rise to this charge, the Defendant left the State of Maine

and went to Texas. When the Defendant learned that the State of Maine had issued a

warrant for his arrest, the Defendant telephoned Detective Darryl Pelletier (Pelletier) of

the Maine State Police.[1] The Defendant informed Pelletier that he wanted to return to

Maine to deal with the situation and asked if the state could send someone to Texas to get

him. Pelletier indicated that he couldn't do this but that if he could get himself to Maine

and then let the officer know that he was back within the jurisdiction, then perhaps

transportation to Aroostook County could be arranged. The Defendant indicated that he

would try to do this. On August 24, 2003, but without making any advance call to

---

[1] It isn't clear just how the Defendant learned of the warrant or that Detective Pelletier
was assigned to the case.

Pelletier, the Defendant presented himself to the Maine State Police Barracks in Houlton; the police took him into custody. Pelletier then interviewed the Defendant at the Aroostook County Jail.

The Defendant seeks to suppress the results of that interview contending that he invoked his right to counsel at the outset of the interview but the officer nonetheless interrogated him without providing counsel.

Pelletier tape recorded his interview with the Defendant which, following the administration of *Miranda,* proceeded as follows:

| | |
|---|---|
| Pelletier: | Alright. Now having heard all those rights which I just explained to you in mind, I'd like to talk to you, you have a problem with doing that? |
| Levesque: | *Yea, but I'd like a, I'd like a lawyer.* (Emphasis supplied) |
| Pelletier: | You'd like a lawyer? |
| Levesque: | Umm. |
| Pelletier: | Ok. Alright. |
| Levesque: | Cause a, what was the charges the other day? You mentioned something about it on the phone, but I think it was a little crucial. |
| Pelletier: | The charge is gross sexual assault. |
| Levesque: | Can you ahh, give ahh, definition? |
| Pelletier: | It's what you did. Is considered gross sexual assault. |
| Levesque: | Can you ahh, see, I, I wasn't available when Carla, my wife, was taking about what the charges were and stuff like that, so I don't know what she said. |

2

Pelletier: What do you mean, what are you talking about.

Levesque: I, I don't know what kind of statement she said to you. Or what...

Pelletier: Well, that's why I'm here to talk to you about, I heard two, you, there's always two sides to the story, Ken.

Levesque: Right.

Pelletier: I heard one side, now I'm here to hear yours.

Levesque: Right. But ahh...

Pelletier You know what I mean?

Levesque: Yeah. But what I'm saying is gross sexual assault you're saying?

Pelletier: correct.

Levesque: That sounds serious, that sounds like...

Pelletier: It's a felony.

Levesque: Yeah, it sounds like something you know, I forced on, on her or something like that.

Pelletier: There's nothing about force.

Levesque: Alright.

Pelletier: If you want to talk to me, we'll talk. Ok? That's why I came down here. Alright?

Levesque: Umm humm.

Pelletier: You called me up, you reach out to me, I tell you there's a warrant on you, ok? I tell you, you said you were going to turn yourself in you did that.

Levesque: Right.

Pelletier: Well part of that, you know, part of this whole process here my friend, you know, is that's why I came down here to talk to you.

Levesque: Umm humm,

Pelletier: I read you your rights. You know what I mean? So, either we're going to talk or we're not going to talk. You know? I'll talk about anything you want to talk about, but you need to want to talk to me. And I'm willing to explain everything to you, but you need to want to talk to me.

Levesque: You know, that's why I'm asking you questions here, cause I, I don't exactly know what these allegations are on me.

Pelletier: Well first of all, you gotta make up you mind, ok? Either we talk or I go away. Are you agreeing to talk to me, is that what you're telling me?

Levesque: That's what I'm doing right now. Yeah.

Pelletier: Well you said you wanted a lawyer. Are you telling me you want to wait; you want to talk to me for a while? Is that what you're telling me?

Levesque: Yeah.

Pelletier: You want to talk to me?

Levesque: Yeah.

Pelletier: Ok, I mean, you're going to see a judge tomorrow and you'll get a chance to ask for an attorney tomorrow, you understand that?

Levesque: Umm.

Pelletier: When you see a judge? Ok? So you'll have the opportunity to that, but I just want to make sure we're clear right now, that you have no problems talking to me, with me right now?

Levesque: Alright, I don't really know you but I'd like to talk to you a little bit, yeah.

Pelletier: Well you talk to me on the phone.

Levesque: Right.

Pelletier: You knew enough to seek me out; I don't know how you got my name out of the whole deal.

Levesque: But ah, the question is, I, I don't think you understand what I'm trying to say.

4

Pelletier: Well, I don't think you understand what I'm trying to say either.

Levesque: Right.

Pelletier: And you still haven't answered my question.

Levesque: What?

Pelletier: Ok? Do you want an attorney now or are you going to wait until tomorrow.

Levesque: Doesn't really matter.

Pelletier: I read you your rights my friend, and you said you understood 'em.

Levesque: Um humm.

Pelletier: You know? I'm just trying to do things right here, is what I'm trying to do.

Levesque: Yeah, me too.

Pelletier: Ok.

Levesque: I want to cooperate with you.

Pelletier: I understand that, I understand that. So now I'm going to ask you again, do you want to talk to me or do you want to [wait] till tomorrow and talk to an attorney?

Levesque: I want to talk to you but can I ask questions along the way? Like I just did?

Pelletier: Well, it's going to be hard for you to ask me questions, ok, without me asking you questions. You understand what I'm saying?

Levesque: Yeah, I think so.

Pelletier: Ok, and like I said earlier, you know, I heard one side of the story, that's why I'm here today is to hear your side of the story. There's always two sides my friend.

Levesque: Right.

5

| Pelletier: | Ok? And I don't make determinations here of what the outcome of this is. Right? |
|---|---|
| Levesque: | Umm. |
| Pelletier: | That's somebody else's determination. So, you know, the choice is yours, here, we can sit down and we can chat all day, I got all the time in the world my friend, I'll stay here for two or three hours, as long as you need for me to stay here, I can do that. |
| Levesque: | Right. |
| Pelletier: | Is that what you want me to do? |
| Levesque: | *Ok, let's do it.* (Emphasis supplied) |
| Pelletier: | Ok, alright. Just gonna start with the simple stuff here first, ok? |
| Levesque: | Alright. |

The Defendant contends that his statement, *"Yeah, but I'd like a, I'd like a lawyer."* constitutes an invocation of his right to counsel and required an immediate termination of the interrogation. The State contends that in the context of the situation, the Defendant's statement was ambiguous and entitled the officer to ask additional questions to clarify the Defendant's intentions.

In the present case, the court concludes that the Defendant's statement *"Yeah, but I'd like a, I'd like a lawyer."* is a clear, unambiguous and unequivocal statement that he wanted to have the help of a lawyer. This court agrees with the Defendant that Smith v. Illinois, 469 U.S. 91; 105 S.Ct. 490; L.Ed. 2d 488 (1984) is instructive in this case, but takes a different perspective.

In Smith, the Supreme Court states clearly that "an accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless he validly waives his earlier request for the assistance of counsel. Smith at p. 94,95 citing Edwards v. Arizona, 451 U.S. 477 (1981). The Supreme Court indicated that the threshold inquiry should be whether a Defendant has invoked his right to counsel. This is a "bright-line rule" and requires that all *questioning* must cease after an accused requests counsel. Smith at p. 98.

Smith points out that this "rigid" prophylactic rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further

questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. Smith at p. 95 citing Edwards. Thus, invocation of the right to counsel and waiver of the right to counsel are two entirely distinct inquiries. Id. at. P. 98.

The Law Court endorsed these same principles in State v. Curtis, 552 A.2d 530,532 (Me. 1988) when it wrote:

> When a suspect makes an unambiguous and unequivocal request for counsel and thereby invokes his right to counsel, custodial interrogation must cease and the police may not resume interrogation until counsel has been made available *or the suspect initiates further discussions with the police and waives the right he previously invoked.* (Emphasis supplied) (See also Edwards v. Arizona, 451 U.S. 477,484, 101 S.Ct. 1880; 68 L.Ed. 2d 378; (1981)

It's clear that the State did not furnish any attorney to the Defendant and that eventually there was police custodial interrogation of the Defendant. Therefore the real question in this case, is not whether the Defendant invoked his right to counsel (he clearly did), but whether he waived that right after invoking it. As indicated in *Edwards*, whether there has been a valid waiver or not is necessarily dependent on the facts of the particular case.

> It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. Edwards at. P. 482.

Thus, once the Defendant invoked his right to counsel, there could be no further interrogation of him until counsel was provided, unless *the Defendant himself initiates further communication, exchanges, or conversations with the police.* Edwards at. P. 484 In this case, after the Defendant indicated that he would like to have a lawyer, Pelletier's response is simply "Ok. Alright." The officer did not ask any other questions. The Defendant, however, did.

The court has listened to the tape recording of this interview. It is significant that after invoking his right to counsel, the Defendant sustained the dialogue with Pelletier by asking the police officer questions about the nature of the complaints that someone had made against him. This was not police initiated custodial interrogation of the Defendant. It was the other way around. It is not surprising that Pelletier was disinclined to answer the Defendant's questions or to give him information about the matter under investigation. Rather than answer the Defendant's questions, the officer pressed the Defendant on his own threshold question. Did the Defendant want to speak with him or not and if he did want to speak with him, did he want to do it with an attorney present ? In the court's view, the Defendant's repeated efforts to solicit information from Pelletier

7

and to engage him in a discussion about the case justified Pelletier's cautious insistence on clarifying whether the Defendant wanted to assert or to waive his right to counsel prior to any interrogation. It's important to note that prior to the Defendant's statement, *"let's do it."* the officer did not ask any questions at all about the case being investigated.

The State has the burden of proving a waiver of rights, including the right to the assistance of counsel by a preponderance of the evidence. State v. Curtis 552 A.2d 530,531 (Me. 1988). An express waiver can be either written or oral. An implied waiver can also be effective and can be established more circumstantially by the Defendant's overall conduct. Id. P. 532. Arguably, this case presents both circumstances.

Although the court finds that the Defendant invoked his right to counsel, the court concludes that his response *"let's do it"* is a direct statement of his intent to answer Pelletier's questions and to do so without the benefit of counsel. Although it is clear that the Defendant moved fairly quickly from invoking a right to counsel and waiving a right to counsel, there is no predetermined, minimally required intervening length of time between an invocation and a valid waiver. Over the course of just a few minutes, the Defendant was informed of his rights; invoked his right to counsel and then, on his own initiative, stated that he wanted to cooperate and he did so. The court is persuaded that the Defendant freely and knowingly waived his rights and made an informed choice to speak with Pelletier without counsel.

The court finds that the Defendant made a knowing, voluntary and intelligent waiver of his right to remain silent and of his right to the assistance of counsel.

The entry shall be: The Defendant's Motion to Suppress is denied.

Date: February 17, 2004

JUSTICE, SUPERIOR COURT

E. ALLEN HUNTER

8